Richard F. Lewis v. Commissioner.
Lewis v. Commissioner
Docket No. 4917.
United States Tax Court
1946 Tax Ct. Memo LEXIS 85; 5 T.C.M. (CCH) 784; T.C.M. (RIA) 46220; September 12, 1946
Clyde C. Sherwood, Esq., 333 Montgomery St., San Francisco 4, Calif., for the petitioner. T. M. Mather, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency of $12,559.91 in income tax for the year 1941. Certain adjustments are not contested. The question to be decided is the amount of the capital gain which petitioner, the sole stockholder of Juneau Water Company, realized in 1941 when the Company was liquidated and dissolved. The parties are agreed that the fair market value in 1941 of the assets which were distributed to petitioner was $151,457.37. The dispute relates to (a) the adjusted basis of the stock of Juneau Water Company on March 1, 1913; and (b) the amount of the additional investments which petitioner made in the Company after *86 March 1, 1913. The respondent has determined that petitioner realized a gain of $95,240.18 upon the liquidation of Juneau Water Company. Petitioner, using as the adjusted basis of the stock $91,474.66, contends that he realized a gain of not more than $59,982.71. Petitioner filed his return with the collector for the first district of California. Findings of Fact A water distributing business, known as Juneau Water Company, was established in Juneau, Alaska, at some time prior to 1890. That system served the city of Juneau. In 1891, there were about 100 customers of the system. The business and water system were owned in equal shares by petitioner's father and aunt. In 1900, petitioner's father gave him his one-half interest in the business and in 1902, petitioner agreed to purchase from his aunt her one-half interest for $40,000, of which he paid $35,000 up to the time of her death, and then inherited the portion not paid for. In 1902, a corporation was organized, Juneau Water Company, which acquired all of the water plant and going concern in exchange for all of the stock of the corporation, 600 shares having a par value of $60,000. All of the stock was issued to petitioner *87 except two qualifying shares. Petitioner became the president of the Company. The corporation was completely liquidated and dissolved on May 24, 1941, all of the assets being distributed to petitioner. The fair market value of the assets at the time of distribution in 1941 was $151,457.37. Petitioner is a lawyer. He graduated from the Harvard Law School in 1893. After graduation, he practiced law in Juneau for several years, specializing in mining law. Later, prior to 1906, he established a law office in San Francisco, which he has maintained since then. He has always worked out the plans for the planning of construction of additions to the water system of the Juneau Water Company, since 1902, and has made the purchases of lands and materials. He has gone to Juneau every year since 1890, sometimes twice a year, except for two years. Prior to 1913, he was in Juneau most of the time for several years. Some of the records of the Juneau Water Company for years prior to 1906 were kept in petitioner's office in San Francisco. These records were destroyed in the San Francisco fire in 1906. From 1906 until the present time, petitioner has kept in his possession the cancelled checks of *88 the Water Company's bank account, other records of the Company, and his own cancelled checks. At the time of the organization of the corporation in 1902, the properties and assets of the Juneau Water Company were appraised at a value of $60,000. Petitioner was offered $50,000 for the entire business in 1899, but he refused the offer as being too low. On March 1, 1913, the Juneau Water Company was a going concern, an established public utility. The population of Juneau was about 5,000. The assets of the Company included an exclusive franchise, real estate, tunnels, rights of way, two mining claims, water rights, reservoirs, tanks, and certain depreciable property. The water utilized by the system is derived from springs and a series of streams. Water for human consumption is not plentiful in Juneau. In 1913, the flow of water from springs was about five cubic feet per second, equal to 250 miner's inches. From 1891 to 1913, a period of 22 years, the water system was developed and extended, pipes were laid; tunnels and reservoirs were built; additional water was brought into the system; rights of way for transmission were put in. From 1891 through 1911, the total cost of additions *89 and improvements in developing the system was $65,841. No expenditures for the system were made in 1912 and 1913, but between 1913 and 1916 physical improvements and the installation of new pipe lines, valves, hydrants, and a concrete flume were made at a cost of between 30 and 40 thousand dollars. From 1907 through 1912, both years inclusive, the gross receipts of the water system were $10,000, and over, increasing in each year and amounting to $10,700 in 1913. The water system of Juneau Water Company was appraised in 1916 for the purpose of consideration by the city of Juneau of purchasing the system as a municipal utility. Under this appraisal the water system and properties were valued at $116,725. The fair market value of petitioner's stock in Juneau Water Company on March 1, 1913 was $70,000. From March 1, 1913 until May 24, 1941, petitioner made cash contributions to Juneau Water Company amounting to $11,827.27, which have not been repaid. The adjusted basis of petitioner's stock for determining gain or loss upon the liquidation of the corporation in 1941 is $81,827.27. Opinion The problem of determining the adjusted basis of petitioner's stock in Juneau Water *90 Company for the purpose of computing the gain realized upon the liquidation of the Company in 1941 requires determining (a) the cost of the stock on March 1, 1913, and (b) the total net amount of contributions which were made by petitioner between March 1, 1913 and May 24, 1941, which were not repaid. The respondent has determined that the fair market value of the stock on March 1, 1913 was $51,000, and that the advances to the corporation after that date, not repaid, were $5,217.19. On brief, he contends that these determinations should be sustained. It has been found as a fact that the petitioner advanced $11,827.27 to the corporation after March 1, 1913, which was not repaid. This finding is made from petitioner's testimony which is based upon his records and cancelled checks. Petitioner's evidence on this item stands unrefuted. The main question relates to the fair market value on March 1, 1913 of all of the stock of Juneau Water Company. The stock was issued in exchange for the property of an existing water distributing system and business. In determining the fair market value of the stock, due regard shall be given to the fair market value of the assets of the corporation *91 on March 1, 1913. Section 113(a)(14) of the Internal Revenue Code. The parties are agreed that the question is to be determined under sections 111, 113(a)(14), and 113(b). The only question to be determined is the fair market value of the stock on March 1, 1913. The question presented is difficult for several reasons: There was no public utility regulatory body in the Territory of Alaska in 1913, so that, if it were of assistance, there was no valuation of the water system property for rate making purposes. The Juneau Water Company had an exclusive franchise to distribute and sell water in the city of Juneau, and so was a monopoly and a utility. Utility property of the kind in question is not ordinarily the subject of barter and sale. See Los Angeles Gas and Electric Corporation v. R.R. Commission, 289 U.S. 287, 305. The corporation was owned by a single stockholder. The parties (no doubt because they could not do so), have not offered any evidence of the fair market value of comparable stocks or properties at the crucial date. The location of the property in a remote frontier town, and the condition of the water system at a time when it was over *92 22 years old and yet still in its early years, compared to the present, make the determination of the fair market value of the stock difficult. Neither party has cited any particularly pertinent case in support of his contentions. Each rests his case upon the opinions of expert witnesses on value. The record consists of the testimony of three expert witnesses, together with petitioner's testimony from his records and personal knowledge of costs and depreciation. Petitioner relies upon the opinions expressed by two witnesses in addition to his own opinion of value. Respondent relies upon the testimony of one expert whose opinion of value is identical with the determination made by the respondent in determining the deficiency. (It appears that respondent's expert witness is the same person who made the report upon which the final determination was made.) Under these circumstances we do not feel obliged to go any further than the parties have done in their briefs, insofar as the citation of authorities might be pertinent. But we observe that "the valuation of property shall be made in the light of the facts and circumstances as known at the date of valuation"; Law of Federal Income *93 Taxation, Mertens, Vol. 10, p. 440, par. 59.02. Both of petitioner's witnesses, including the petitioner, knew the properties as they were in 1913; whereas respondent's expert has never seen the property, has never been in Juneau, and has formulated his opinion of value by professional formulas and rules, only. One of petitioner's witnesses, B. D. Stewart, an engineer, made an appraisal of the Juneau Water Company properties in 1916, and he testified from his notes which were made at that time. He was a competent person; competent to make such appraisal; and his opinion of the fair market value of the assets of the corporation, a going concern, is entitled to considerable weight. The chief difference in the respective valuation for which respondent and petitioner contends lies in their respective valuations of intangibles, such as water and water rights and going concern value. They differ also on the point of earning power in 1913 as a factor in determining the fair market value in question. There is some dispute about the amount of the net earnings during five years prior to 1913. There is some evidence that earnings were steadily increasing. The parties are agreed upon the actual *94 cost depreciated as of March 1, 1913. See Jerecki Manufacturing Co., 12 B.T.A. 1165, 1179. In considering all of the evidence of record, we are of the opinion that respondent's expert witness has under-valued water and water rights at March 1, 1913, and going concern value. The water system was well established in 1913, being over 22 years old. Water is not plentiful in Juneau, and the corporation had done much before 1913 to develop water resources and channel them into the system, as well as to overcome actual dangers to the purity of the water supply from streams contaminated by mines. It is now well established that going value is an element to be considered in valuing utility property. McCardle v. Indianapolis Water Co., 272 U.S. 400; Valuation of Property, James C. Bonbright, Vol. II, p. 1147. The opinion of value expressed by petitioner's witness, B. D. Sewart, is persuasive. However, his testimony was given in response to written interrogatories, and leaves unanswered some questions which might have been clarified through cross examination if he had appeared at the trial of this case. (His deposition was taken in Juneau, Alaska.) Furthermore, *95 his valuations of some items are greater than the valuations given by petitioner in expressing his opinions of value. Upon consideration of all of the experts' opinions of fair market value, and of all of the other evidence, it has been found as a fact that the fair market value on March 1, 1913 of petitioner's stock in the Juneau Water Company was $70,000. The adjusted basis of the stock for determining the gain upon the liquidation of the corporation is $81,827.27. It follows that petitioner's gain in 1941 was $69,630.10, upon the distribution of the assets of the corporation in exchange for his stock. Decision will be entered under Rule 50.